*491 OPINION OF THE COURT
Caesar D. Cirigliano, J.
On November 23, 2006, Javier Garcia-Cepero was arrested and charged with operating a motor vehicle while under the influence of alcohol pursuant to Vehicle and Traffic Law § 1192 (1) and (3). Motions were filed and on August 11, 2008, this court conducted a Mapp refusal hearing to determine whether the police officers had probable cause to stop and arrest the defendant and whether or not the defendant refused to submit to a breathalyzer test.
The hearing on this matter commenced on August 11, 2008 and concluded on August 15, 2008.
Facts
The court finds the testimony of Sergeant Kiyar and Police Officer Priolo credible in part and credits that part of their testimony that on November 23, 2006 at approximately 2:30 a.m., Sergeant Yalcin Kiyar and Police Officer Priolo were parked in their marked RMP in the eastbound lane on Westchester Avenue in Bronx County when they observed a vehicle traveling at the speed limit on the wrong side of the road, heading westbound in the eastbound lane down Westchester Avenue (transcript at 7, lines 20, 21). The officers made a U-turn and proceeded to follow the vehicle and they noted that at some point, the motorist started driving in the correct lane. The officers made several attempts to pull the motorist over, using the bullhorn to give verbal commands. Finally, the officers went around the vehicle consequently traveling in the eastbound lane and signaled the motorist to pull over which he did. Upon pulling the motorist over, the officers approached the vehicle and asked him to lower his window but there was no compliance. Kiyar then opened the driver’s door and asked the motorist both verbally and with a hand gesture to step out of the vehicle and the motorist complied. At that point, the officers noted a strong alcohol odor emanating from the motorist’s body and that he had bloodshot eyes, a flushed face, was unsteady on his feet, and that according to Kiyar and Priolo, the motorist’s speech was slurred while making a statement to the officers in Spanish as he was exiting the vehicle, the phrase “un pequetas.”[1] Hence, they concluded that the motorist was intoxicated. Kiyar then *492 instructed his partner, Priolo, to place the motorist, that is Mr. Javier Garcia-Cepero, in custody. Mr. Garcia-Cepero was then transported to the 45th precinct to subject him to a breathalyzer test. Priolo testified that during the ride to the precinct, the defendant had a strong smell of alcohol and that he belched several times.
At the 45th precinct, Priolo testified that at about 4:00 a.m., Mr. Garcia-Cepero was shown a videotape in Spanish, by Officer Winchell, which was a verbatim Spanish interpretation of Vehicle and Traffic Law § 1194 (2) (f). A viewing of the tape made during the procedure revealed that defendant responded to the final question on the tape of whether he consented or refused to take the breathalyzer test, by stating “no drogas, no drogas” which means “no drugs, no drugs.”[2] Officers Winchell and Priolo took this to mean that defendant refused the breathalyzer test and thus, it is that alleged refusal which forms the basis for the prosecution’s request for the consciousness of guilt presumption.
Discussion and Findings
The court was required to answer (1) whether there was probable cause to arrest the defendant; (2) did the defendant refuse to take the breathalyzer test; and (3) was Mr. Garcia-Cepero’s refusal a persistent refusal. Moreover, due to the specific facts of this case, this court was also required to decide whether the defendant’s due process rights were violated; and whether the New York Police Department’s procedure of requiring only a breathalyzer test of non-English-speaking individuals while requiring a breathalyzer and a HGN field test of English-speaking individuals, violates the Equal Protection Clauses of the United States Constitution and the New York State Constitution.
Probable Cause to Arrest
The court finds that because the police officers observed Mr. Garcia-Cepero cross a double yellow line into the oncoming lane of traffic, they had probable cause to pull the defendant’s car over. Furthermore, when they smelled alcohol and observed defendant’s bloodshot eyes and unsteady balance they had sufficient reasonable cause to place him under arrest for driving while intoxicated.
*493 Refusal to Take Test
The issue which is more complicated is whether the defendant refused to take his breathalyzer test. Both sides have submitted written memoranda of law and have presented verbal arguments on behalf of their positions.
Section 1194 (2) (f) of the Vehicle and Traffic Law states:
“Evidence of a refusal to submit to such chemical test or any portion thereof shall be admissible in any trial, proceeding or hearing based upon a violation of the provisions of section eleven hundred ninety-two of this article but only upon a showing that the person was given sufficient warning, in clear and unequivocal language, of the effect of such refusal and that the person persisted in the refusal.” (Emphasis added.)
In the present case the defendant heard a verbatim Spanish translation of Vehicle and Traffic Law § 1194 (2) (f).
Under ordinary circumstances where a person speaks English fluently the reading of section 1194 (2) (f) and the mere asking if the person understands the warning qualifies as a sufficient warning in clear and unequivocal language.
In the cases submitted by the District Attorney, the record provides conclusive evidence that the English-speaking person understood the warnings and was subject to the sanctions of Vehicle and Traffic Law § 1194 (2) (f). Cases such as People v Reynolds (133 AD2d 499 [1987]), where the defendant was given the warning on more than one occasion and persistently refused to submit to a blood test; Matter of Reed v New York State Dept, of Motor Vehs. (59 AD2d 974 [1997]), where defendant refused and later, though still within the two-hour window, consented to the breathalyzer test; Matter of Nicol v Grant (117 AD2d 940 [1986]), where the defendant first consented to the test, then “unequivocally stated” that she would not take the test, then later recanted within the two-hour period, and the Court found that petitioner refused to take the test within the meaning of Vehicle and Traffic Law § 1194 (3) (a); and People v Ferrara (158 Misc 2d 671 [1993]), where once again the defendant initially refused but later consented, and the court found that the recantation of the defendant’s refusal did not suffice to undo that refusal.
The District Attorney contends, based on Matter of Carey v Melton (64 AD2d 983 [1978]) and People v Reynolds (133 AD2d 499 [1987]), that “understanding” is not required.
*494 In Melton, the Court dealt with an English-speaking defendant who claimed that he was too intoxicated to understand the warning. The Court (at 983) held that Vehicle and Traffic Law § 1194 (2) cannot be construed “as requiring a ‘knowing’ refusal” by the defendant and went on to explain that to interpret section 1194 (2) to require such would “lead to the absurd result that the greater the degree of intoxication of an automobile driver, the less the degree of his accountability.” Also, in Reynolds, the Court dealt with an English-speaking defendant who sought to suppress evidence of his refusal to submit to a blood alcohol test due to incapacitation. The Court (at 502) held that the lower court did not err in denying defendant’s motion to suppress evidence of his refusal since the defendant was warned several times in the ambulance on the way to the hospital and at the hospital, “in clear and unequivocal language” about the consequences of said refusal. Melton and Reynolds are not applicable to the facts in our present case and are distinguishable.
It is not the contention of the defense that the defendant was too intoxicated to understand or that the defendant was physically incapacitated but rather that the defendant does not speak or understand English and therefore the mere reading of a document or viewing of a videotape without ascertaining whether the defendant understood does not constitute “clear and unequivocal language.” Further, the defense contends that the videotape of the defendant’s responses, that is “no drogas, no drogas,” and body language supports their contentions.
In People v Niedzwiecki (127 Misc 2d 919 [1985]), the judge noted that
“[Vehicle and Traffic Law § 1194 (2)] is couched in terms familiar to most law enforcement officials, legislators, prosecutors, attorneys and judges. However, this court believes that the choices and ramifications flowing therefrom were by no means clearly understandable to the defendant, particularly since he was not proficient in English.” (Id. at 920.)
During the course of the hearing, this court viewed the videotape of the proceeding in the 45th precinct numerous times and had the official Spanish court interpreter interpreting any words the defendant spoke. The court observed that during the proceeding the defendant was steady on his feet and listened to the English reading of the rights without response. Further, after watching the Spanish videotape, his responses in Spanish *495 “no drogas, no drogas,” and his facial expressions and body language obviously depicted a person who neither understood nor comprehended the choices and was utterly confused. He looked in the arresting officers’ direction for some sort of word or expression, which ultimately came when he was asked his name in English and, not understanding, he looked once again to the arresting officer who stated “nombre,” meaning name in Spanish, to which he readily responded “Javier.” The videotape, although used by the prosecutor to show a person who refused to take the breathalyzer and as evidence of consciousness of guilt, depicted anything but. To this court it was the perfect example of a person who, because of the failure to have a Spanish interpreter, was unable to understand the warnings and therefore was deprived of the advantage and the opportunity to take a breathalyzer and the corresponding physical tests — walk the line, etc. — that could have very well been objective evidence of his innocence.
Persistent Refusal
Moreover, in reference to the second requirement that the “person persisted in the refusal,” this court finds that after Mr. Garcia-Cepero finished listening to the Spanish videotape his only response was “no drogas, no drogas,” at which point Police Officer Winchell cut in front of the camera and interrupted the defendant’s response. Clearly, in this court’s opinion, this was not a persistent refusal as required by Vehicle and Traffic Law § 1194 (2) (f). In People v Camagos (160 Mise 2d 880, 884 [1993]), Judge Yellen quotes the dictionary in defining the term “persistence” as “to continue steadfastly or often annoyingly, especially in spite of opposition.” In Camagos, as in the case at bar, the judge was confronted with a non-English-speaking defendant which she took into consideration to find that
“[t]he language barrier prevented the officers from engaging in any further communications with the defendant. There was therefore no opportunity for the defendant to continue steadfastly to refuse to take the chemical exam. The simple ‘No’ uttered by the defendant in no way meets the persistence standard of Vehicle and Traffic Law § 1194.” (Camagos at 885.)
Vehicle and Traffic Law § 1194 has two separate and distinct sanctions for refusing to take the breathalyzer test. The first is the immediate suspension and revocation of defendant’s driver’s *496 license and the second is that it could be presented as evidence against the defendant in any trial. The first sanction addresses the privilege to drive while the second sanction addresses the use of evidence at trial. It is this court’s opinion that before a defendant’s license to drive can be suspended or revoked, or evidence of the defendant’s consciousness of guilt can be presented against the defendant at trial, the procedure by the police must comport with the defendant’s due process and equal protection rights and cannot be discriminatory against any group of people.
Equal Protection
United States Constitution, Fourteenth Amendment, § 1 makes it clear that “[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws.” And article I (§ 11) of the New York Constitution provides that “[n]o person shall be denied the equal protection of the laws of this state or any subdivision thereof.” Further, the passage of Civil Rights Law § 40-c expanded the coverage of article I (§ 11) and such states that
“1. All persons within the jurisdiction of this state shall be entitled to the equal protection of the laws of this state or any subdivision thereof.
“2. No person shall, because of race, creed, color, national origin, sex, marital status or disability . . . be subjected to any discrimination in his or her civil rights ... by the state or any agency or subdivision of the state.”
It has been held that although the language of either section “does not identify members of a suspect or protected class, it can be a basis of a finding of discrimination based on national origin when it creates a discriminatory result against all persons who do not speak English rather than persons of any particular nationality.” (Yellen v Baez, 177 Misc 2d 332, 336 [1997] [citations omitted; emphasis added].)
Moreover,
“[t]here is a strong presumption as to the constitutionality of any legislative enactment [i.e. Vehicle and Traffic Law § 1194 (2)], but this will not preclude a court from inquiring into the validity of such presumption.
“Although a statute may be nondiscriminatory on its face, it may be grossly discriminatory in its operation.” (People v Kennedy, 128 Misc 2d 937, 939 *497 [1985] [citations omitted].)
It has also been held that “[t]he question of equal protection turns ultimately on the similarity or dissimilarity of rights differentiated by a statute; and the reasonableness of classification when different methods are used to affect different classes.” (8200 Realty Corp. v Lindsay, 27 NY2d 124, 135-136 [1970].) It is this court’s opinion that Vehicle and Traffic Law § 1194 does not differentiate between an English- or non-English-speaking individual. In fact, Vehicle and Traffic Law § 1194 (b) states that “[e]uery person operating a motor vehicle . . . which is operated in violation of any of the provisions of this chapter shall, at the request of a police officer, submit to a breath test to be administered by the police” (emphasis added).
However, it is this court’s firm belief that the procedure employed by the Police Department creates a classification predicated upon a person’s ability to speak and understand the English language and therefore discriminates against non-English-speaking individuals.
Obviously, when a person does not speak or understand English, extra efforts must be made to insure that person’s rights are protected, the same as English-speaking defendants. In People v Niedzwiecki (supra), the court found that a non-English-speaking defendant[3] must “reach a threshold point of understanding the choice presented to him, so he may at least be able to make a decision as to the course of conduct he will take.” (Niedzwiecki at 921.)
In the present case, knowing that Mr. Garcia-Cepero did not speak or understand English, no effort was made to obtain a Spanish-speaking police officer from the 43rd precinct, 45th precinct or any other police facility. The court finds that the procedure employed, that is affording both a breathalyzer and physical test to English-speaking individuals and only a breathalyzer to non-English-speaking defendants, not only differentiates between two classes but more importantly has no reasonable or rational basis and is inherently discriminatory against non-English-speaking individuals.
The mere presence of an interpreter who could have explained more fully the request to take a chemical/breathalyzer test and the ramifications for failure to consent would have obviated the discriminatory procedure. Most of the cases submitted by the District Attorney on the very issue of refusal involved English- *498 speaking defendants who were advised in English and benefited from the additional time spent by the police officers explaining the consequences of not taking the test. Unfortunately, in the case at bar, because of a lack of an interpreter, the procedure of further explaining the consequences of refusal was not available to the detriment of Mr. Garcia-Cepero.
Another point that highlights the differentiation between English-speaking and non-English-speaking defendants is that most English-speaking defendants are ultimately given other tests, specifically the HGN test which encompasses balance, finger to nose, walking the line and other physical tests, to determine whether they are impaired or substantially impaired while the option is never presented to non-English-speaking defendants. The videotapes of these tests and the results of the breathalyzer provide valuable objective evidence which will assist the District Attorney in evaluating the case and in making the important decision whether to continue prosecution and ultimately will give the judge or jury an advantage of seeing how the defendant looked and acted at the scene and within two hours of his arrest. In many cases, this evidence is crucial in determining the defendant’s guilt or innocence. Unfortunately, these tests are automatically excluded for non-English-speaking defendants for reasons that do not show impracticality or impossibility but only that the individual will not be able to understand instructions in English. Clearly, this is a distinction predicated merely on the ability of a defendant to speak and understand English and in this court’s opinion such a distinction violates the Equal Protection Clauses of the Constitutions and is discriminatory.
Procedural Due Process
Article I (§ 6) of the New York State Constitution guarantees to all citizens the right not to be deprived of life, liberty or property without due process of law. (See also US Const, 14th Amend, § 1.)
In People v Torres, the Court held that “[i]t is a well-established precept of due process that non-English speaking defendants in criminal actions are entitled to an interpreter.” (4 AD3d 624, 625 [2004], quoting People v Rodriguez, 221 AD2d 820, 821 [1995], Iv denied 87 NY2d 924 [1996].) Moreover, “[i]t is a fundamental axiom of our system of jurisprudence that due process of law includes the right to have an adequate interpretation of the proceedings. This would apply to a litigant who does not speak sufficient English.” (Yellen at 335.)
*499 The Supreme Court of the United States has created a three part test to evaluate procedural due process issues:
“First, the private interest that will be affected by the official action; second the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.” (See Medina v California, 505 US 437, 443 [1992], quoting Mathews v Eldridge, 424 US 319, 335 [1976].)
In following the United States Supreme Court’s analyses, it is obvious that the private interest that would be affected by the Police Department’s actions or inactions is the guilt or innocence of the accused and privilege to have a driver’s license.
As to the second part of the test, the “risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards,” Mr. Garcia-Cepero was charged with driving while intoxicated under section 1192 (3) of the Vehicle and Traffic Law, a misdemeanor, and would be subject to the sanction of section 1193 (1) (b) of the Vehicle and Traffic Law if convicted— “a fine of not less than five hundred dollars nor more than one thousand dollars, or . . . imprisonment in a penitentiary or county jail for not more than one year, or . . . both such fine and imprisonment.” Further, the defendant’s privilege to drive a vehicle would be suspended. This court finds that the deprivation of such interest by the procedures used have a direct relationship to the defendant’s freedom and privilege to drive. Further, the institution of additional or substitute procedures would eliminate the deprivation of such interests.
In the present case, the court found that the videotape of the defendant at the 45th precinct, when he was advised pursuant to section 1194 (2) (f), was extremely useful in evaluating the testimony of the police officers that the defendant was unstable and stumbled when he got out of the car. The defendant’s flushed face and bloodshot eyes that appeared on the tape were the same characteristics which the defendant possessed during the three days of court proceedings. The police officers testified that Mr. Garcia-Cepero had slurred *500 speech but the question arises, how could the officers make that determination, when the sergeant heard him speak one word in Spanish, “no pequetas,” and the other officer merely heard him mumble in Spanish? During the taping, the defendant spoke two words in Spanish — “no drogas, no drogas”— and because of the brevity of the statement the court was unable to discern any speech pattern or slurring.
Finally, the third part of the test is “the government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.” Obviously, the government has a paramount interest and obligation in securing for all citizens the right to a fair trial and to insure that the ends of justice are served — that the guilty be punished and the innocent be set free. In this case, both the prosecution and/or the defense may have been better served if an interpreter had been used. Indeed, if the defendant had an interpreter who explained the meaning of the choices, he very well may have chosen to take the breathalyzer and any coordination test. There is nothing more fundamental than “[t]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State’s accusations.” (Chambers v Mississippi, 410 US 284, 294 [1973].) Few rights are more fundamental to due process than the right of an accused to present a complete defense. (US Const Amends VI, XIV; NY Const, art I, § 6; Crane v Kentucky, 476 US 683, 690 [1986]; Chambers at 290; Jenkins v McKeithen, 395 US 411 [1969]; People v Husband, 135 AD2d 406, 411 [1st Dept 1987].) Thus, employing interpreters to aid in communication in these types of cases does not seem like an insurmountable burden when balanced against the defendant’s right to a fair trial, an “opportunity to defend against the state’s accusations,” and access to potentially exculpatory evidence.
Conclusion
Therefore, the court finds that the warnings were not sufficient warnings in “clear and unequivocal language” and that there was no persistent refusal. Furthermore, the procedure employed by the New York City Police Department violated the defendant’s due process and equal protection rights and discriminated against non-English-speaking defendant.
*501 Since the procedure employed in this case with a non-English-speaking defendant is atypical and discriminatory, this court strongly suggests that the New York City Police Department reexamine its established procedure of administering the statutory warnings of Vehicle and Traffic Law § 1194 (2) (f) to non-English-speaking defendants in order to comply with the mandates of the Due Process and Equal Protection Clauses of the Constitution of the United States and the Constitution of the State of New York.

. This court notes that the words allegedly spoken by the motorist “un pequetas” has no English translation.

. The official court interpreter provided the interpretation of the particular phrase.

. In Niedzwiecki the defendant was of Polish descent.