[877 NYS2d 274]

In the Matter of Kim Jackson, Petitioner, v Tino Hernandez, as Chairman of the New York City Housing Authority, Respondent.

First Department, April 16, 2009

## APPEARANCES OF COUNSEL

*Brooklyn Legal Services Corp. A*, Brooklyn (*Martin S. Needelman, Paul J. Acinapura* and *Terry Herman* of counsel), for petitioner.

*Ricardo Elias Morales*, New York City (*Nancy M. Harnett* of counsel), for respondent.

## OPINION OF THE COURT

BUCKLEY, J.

Petitioner entered into a residential lease agreement with respondent Housing Authority in May 2003 for an apartment in a public housing building where she and her two minor children have continuously resided. The lease specifically provides that tenant is obligated:

> "To assure that the Tenant, any member of the household, a guest, or another person under the Tenant's control, shall not engage in:
>
> "(i) Any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the Development by other residents or by the Landlord's employees, or
>
> "(ii) Any violent or drug-related criminal activity on or off the Leased Premises or the Development, or
>
> "(iii) Any activity, on or off the Leased Premises or

the Development, that results in a felony conviction."

The Housing Authority's ability to terminate a tenancy is subject to "Termination of Tenancy Procedures." Under those procedures, the Project Manager is to speak with the tenant "in order to discuss the problem which may lead to termination of tenancy, seek to ascertain the facts involved, and, when appropriate, seek to assist the tenant by securing outside help." If remedial actions fails, "or if the [Project] Manager believes that termination of tenancy is the appropriate course of action," the tenant's file and the Project Manager's recommendations are submitted to the Tenancy Administrator for review. If the Tenancy Administrator finds a basis for termination of tenancy, the file is referred to the Housing Authority's Law Department to prepare and send to the tenant a notice of charges setting forth the specific grounds for termination. The notice is sent at least 15 days prior to a date set for a hearing before a hearing officer and is accompanied by a copy of the Termination of Tenancy Procedures, which apprise the tenant that adjournments will be freely granted, and that the tenant has the right to be accompanied by an attorney or other representative, as well as to testify, present witnesses (including character testimony) and evidence, issue subpoenas, inspect the Housing Authority's folder, cross-examine the Authority's witnesses, and "make a general statement, in mitigation, as to why his/her tenancy should not be terminated."

The Housing Authority learned that petitioner had been arrested on June 9, 2006 for possession of two loaded firearms, and by letters dated July 27th and August 3rd offered her an opportunity to meet with her Project Manager to discuss the possible termination of her tenancy based on nondesirable conduct. Petitioner failed to appear at either scheduled meeting with the Project Manager or to avail herself of the letters' offer to call to arrange another appointment. Thereafter, the Project Manager informed petitioner that her file was being forwarded to the Tenancy Administrator for review. By notice dated October 16, 2006, petitioner was formally charged with nondesirable conduct and breach of her lease, based on her possession of firearms in her apartment. A copy of the Termination of Tenancy Procedures was appended to the notice, which expressly reiterated that petitioner could appear at her scheduled hearing, along with such witnesses as she desired, and could be represented by counsel or other representative of her choice; the notice also suggested that she contact a free legal services agency if she could not afford a lawyer.

At the outset of petitioner's hearing, conducted on February 2, 2007, the Hearing Officer ascertained that petitioner had received the charges and understood them. The Hearing Officer reminded her that she had the right to an attorney or other representative, but petitioner asserted that she wished to represent herself and that she was prepared to proceed. Before reading the two charges aloud, the Hearing Officer stated that petitioner could admit or deny the charges, and if she wasn't sure how to respond she should deny them. Petitioner denied both charges: unlawful possession of firearms, and failure to refrain from illegal or prohibited activity under the lease.

The Hearing Officer then explained that the Housing Authority would attempt to prove its case by presenting the testimony of a police sergeant and other evidence, and that petitioner would be able to examine the documents, cross-examine the sergeant, testify on her own behalf, call witnesses, and present documents. When petitioner mentioned a letter from her criminal attorney indicating that criminal charges had not been pursued, the Hearing Officer stated that the proceeding was not a criminal matter, but a civil matter involving the possible termination of her tenancy and entailing a different burden of proof. The Hearing Officer continued that, regardless of the outcome in Criminal Court, the burden of proof at the administrative proceeding was different. In response to the Hearing Officer's repeated queries, petitioner answered that she understood and had no questions.

The Housing Authority called a police sergeant, who testified that on June 9, 2006 he went to petitioner's apartment in response to an informant's telephone call. He identified himself to petitioner as a police officer and explained why he was there. Petitioner admitted that she had firearms in a shoe box in her bedroom closet. The sergeant discovered a loaded 9 millimeter gun and a defaced loaded .380 caliber gun in that location and placed petitioner under arrest.

Petitioner expressly declined to ask the sergeant any questions on cross-examination, and did not object to the admission into evidence of her lease or income affidavit. After the Housing Authority rested, the Hearing Officer asked petitioner if she wished to testify, call witnesses, or present evidence; she offered only a letter from her criminal lawyer stating that petitioner had not been convicted of any crime and that her case had been dismissed without prejudice. The Hearing Officer made sure there was no other evidence petitioner wished to present.

Petitioner also declined an offer to make a closing statement. The Hearing Officer informed petitioner that she would receive a written decision regarding the proposed termination of her tenancy. Yet again, the Hearing Officer asked if petitioner understood that the administrative proceeding involved a different burden of proof than the criminal case and asked if she had any questions.

Thereafter, the Hearing Officer issued a written decision finding that the charges had been sustained, since petitioner provided no explanation as to why the loaded firearms were in her closet, and that her continued tenancy would pose a grave risk of danger to the residents and Housing Authority employees. The Housing Authority terminated petitioner's tenancy in accordance with that determination.

Petitioner commenced this proceeding pro se, alleging a deprivation of due process in that she had not been afforded an opportunity to interview with the Project Manager prior to the administrative hearing, and that the hearing was conducted without adequate notice or the opportunity to be represented by counsel or to cross-examine the police sergeant. She also claimed that friends and relatives were staying with her during the summer of 2006, some unspecified person allowed the police into her apartment without her consent, the police "went directly to a closed utility closet and retrieved a shoe box where the guns were recovered," and she had no prior knowledge there were guns in her apartment. After retaining an attorney, petitioner amended her petition to assert a claim that, because she was unrepresented at the administrative proceeding, the Hearing Officer had an obligation to conduct an independent examination of her regarding the presence of the firearms in her apartment and the circumstances of her arrest.

■ The record demonstrates that petitioner was given ample opportunity to meet with the Project Manager before her file was forwarded to the Tenancy Administrator.

■ As reflected by the administrative transcript, the Hearing Officer went to great lengths to apprise petitioner of her rights and to make certain that petitioner did not wish to retain an attorney, testify, call her own witnesses, present evidence other than her criminal lawyer's letter, cross-examine the police sergeant, or make any statement. The Hearing Officer also explained that the dismissal of the criminal charges did not resolve the issue of petitioner's continued tenancy. Petitioner chose to attend the hearing without the benefit of counsel, and

she turned down repeated offers to adjourn to retain an attorney or to ask questions of the Hearing Officer, cross-examine the Housing Authority's witness, present evidence, or even make a statement. Throughout the proceeding, the Hearing Officer asked petitioner if she understood what she was permitted to do or if she had any questions, and she identifies no basis for the Hearing Officer to have doubted her assurances that she did understand her rights and the nature of the proceeding. Petitioner nevertheless contends that the Hearing Officer should have explicitly asked her whether the firearms were hers and, if not, whether she knew the firearms were in her apartment or who brought them there.

The implication that petitioner did not appreciate the significance of those issues at the time of the hearing, and therefore that it never occurred to her to volunteer that she did not know the guns were in her apartment before the arrival of the police and that a guest must have brought them, strains credulity. Indeed, in her original article 78 petition, unprompted and without the aid of counsel, petitioner not only raised those matters but even contradicted the sergeant's testimony that she willingly permitted the police to enter and that the firearms were in a bedroom closet.

Petitioner's cases stand for the general proposition that there may be instances where a hearing officer should make inquiries of a pro se participant to adequately develop the record (see e.g. *Earl v Turner*, 303 AD2d 282 [2003], *lv denied* 100 NY2d 506 [2003] [complete failure to develop the record, including no inquiry into issue of willfulness, on which the agency offered no evidence]; *Matter of Hendry v D'Elia*, 91 AD2d 663 [1982] [pro se petitioner evinced confusion by directing all her testimony to her activities during the month of September, where the month of August was at issue, and the administrative law judge and agency representative contributed to the confusion by asking petitioner only about September]). However, that general proposition is inapplicable here, where by petitioner's own allegations there were no complex legal principles at issue or confusing details bearing on non-obvious consequences, but only a simple factual account with which she disagreed in almost all respects. None of the cases cited by petitioner holds that a hearing officer must ask a pro se participant whether she agrees with each statement made by an agency witness or believes a statement is inaccurate or untruthful.

Under the circumstances presented by this record, the Hearing Officer's conduct of the hearing did not deprive petitioner of any due process rights.

Accordingly, the determination of respondent Housing Authority, dated February 28, 2007, terminating petitioner's public housing tenancy on the ground of nondesirability, in a proceeding brought pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, New York County [Richard F. Braun, J.], entered December 4, 2007), should be confirmed, without costs, the petition denied and the proceeding dismissed.

GONZALEZ, P.J., FRIEDMAN and RENWICK, JJ., concur.

Determination of respondent Housing Authority, dated February 28, 2007, confirmed, without costs, the petition denied and the proceeding dismissed.