OPINION OF THE COURT
Lucy Billings, J.
I. The Basis for this Proceeding
Petitioner seeks to reverse respondent New York State Department of Motor Vehicles’ determination of August 31, 2010, affirming the revocation of her driver’s license for one year based on her refusal to submit to a chemical test to measure the level of alcohol in her blood, after her arrest for driving under the influence of alcohol. (Vehicle and Traffic Law §§ 1192, 1194 [2].) Although petitioner was acquitted of the charges under Vehicle and Traffic Law § 1192, that acquittal did not eliminate the revocation. (Vehicle and Traffic Law § 1194 [2] [b]; § 1199 [1]; see People v Burnet, 24 Misc 3d 292, 297 [Sup Ct, Bronx County 2009].) The revocation period also now has elapsed, but to reinstate her license she still must pay the $750 civil penalty respondent assessed as part of its administrative determination on her refusal: a penalty she cannot afford, being unemployed, due in part to the loss of her license. (Vehicle and Traffic Law § 1194 [2] [d] [2]; § 1199.)
Petitioner explains, in sum, that, when the police asked her to submit to the chemical test, she was experiencing an asthma attack, so her primary concern was her request that the police transport her to a hospital to receive emergency treatment, before attending to the test. She maintains that the police never warned her of the potential license revocation if she refused the chemical test.
The verified petition, written by petitioner without legal assistance, specifically complains about the conduct of respondent’s administrative hearing on her refusal, the revocation, and the monetary penalty. She points out that, when the police *317 officer witness testified about her arrest and refusal to submit to the test without leading questions from respondent’s Administrative Law Judge (ALJ), the officer never mentioned that he or his fellow officer warned her about the consequences of refusing. Only after the ALJ’s insistent coaching, to the point of sua sponte identifying and admitting a form reciting the required warning and giving it to the witness to read, did he conclude that his fellow officer must have recited that warning to petitioner. Petitioner’s appeal form filed with respondent’s administrative Appeals Board April 12, 2010 perhaps best summarizes this basis for her appeal:
“Furthermore, the officer at the hearing was not going to testify that he warned me of the consequences of a refusal. He said nothing at all about any warnings until the judge at the hearing coached him to read from a form .... Until the judge said ‘don’t you remember saying this,’ and actually pointed to the part of the form where the refusal language is, the officer was not going to testify to ever warning me . . . because the officer did not actually warn me of the consequences of a refusal . . . .” (Verified answer, exhibit A.)
As explained more fully below, the court vacates the revocation and civil penalty on a combination of grounds. Due to petitioner’s distressed physical and emotional condition, petitioner did not knowingly refuse the chemical test. Although Vehicle and Traffic Law § 1194 (2) (a) implies consent to a chemical test, regardless of whether consent is unknowing and involuntary, the statutory terms do not similarly imply a refusal if it is unknowing or involuntary. Even if the court is to construe Vehicle and Traffic Law § 1194 to imply a knowing and voluntary refusal regardless of the circumstances, however, respondent failed to satisfy its burden to prove a persistent refusal, which Vehicle and Traffic Law § 1194 (2) (f) explicitly requires. Moreover, even if evidence of a persistent refusal was not required in the administrative hearing, the evidence that petitioner’s refusal was predicated on a warning of the consequences, presented only through the ALJ’s overreaching, was tainted by his readily perceivable bias.
II. The Administrative Record
While petitioner admits she refused a chemical test at the point when she was experiencing an asthma attack and urgently needed medical treatment, respondent’s “REPORT OF RE *318 FUSAL” executed by Police Officer Rogers, who did not testify at the hearing, does not specify that petitioner refused any test. Where the form asks whether the vehicle “operator refused to submit to a . . . BLOOD . . . URINE . . . SALIVA [or] BREATH test,” the officer failed to respond. (Id.)
At the administrative hearing, where arresting officer Anthony testified, he never offered or identified the report of refusal. After Officer Anthony testified about the circumstances surrounding petitioner’s arrest, only the ALJ, acting as respondent’s advocate, produced the report and identified it in front of the witness, describing it to him: “I show you a report of refusal to submit to a chemical test.” (Id., tr of proceedings, Mar. 18, 2010, at 10.) The ALJ proceeded, through leading questions, to elicit the witness’s affirmation of the criteria authenticating the document and qualifying it as a business record. Satisfied that the report constituted sufficient evidence to support a refusal and warning of the consequences, the ALJ admitted the report in evidence and asked the officer whether he wanted to offer any further testimony.
Returning to the circumstances following petitioner’s arrest, Officer Anthony volunteered “that she did explain to me later on that she had a death in the family . . . , that might have contributed ... to the — the problems she gave us. . . . And after some time she — she was cooperative, and . . . easy to deal with.” (Id. at 12.) Nevertheless, no one attempted a second time to administer a chemical test to her.
Upon examination by petitioner, Officer Anthony further admitted that she was complaining about her asthma. The ALJ quickly interjected with more leading questions, reverting back to the report of refusal, and reminding the witness that it specified the warnings given to petitioner when asked to take a blood test, even though the report did not specify that test. The ALJ asked the witness to read the warnings from the exhibit that the ALJ specified were given to her.
Petitioner, in turn, testified that her father, whom she had been caring for, died November 17, 2009. Late in the evening November 18, 2009, her friend Donna Kelly telephoned petitioner and asked her to drive Kelly home from a bar. Although petitioner preferred not to be bothered in her grief and was crying constantly, she acceded because Kelly had consumed too much alcohol to travel home by herself. Once in petitioner’s vehicle, Kelly argued incessantly about where she wanted to be driven, causing petitioner to drive erratically, which led to the *319 police stopping her vehicle. Smelling the alcohol odor emanating from Kelly and the alcohol she had spilled, and observing petitioner’s watery, bloodshot eyes, the police arrested petitioner in the early morning of November 19, 2009.
Although petitioner volunteered “to take a sobriety test” when the police stopped her, the officers did not offer a test until later. {Id. at 19.) By then, petitioner, distraught that she might not be released for her father’s funeral the next day, in pain from handcuffs so tight they were cutting her wrist and numbing her hand, fighting off an asthma attack, and worried she would not receive timely treatment as she waited hours for it, had become too agitated and distracted to concern herself immediately with the test.
Officer Anthony’s account was consistent. Petitioner was vomiting, experiencing difficulty breathing, and suffering an asthma attack severe enough that the police secured an ambulance to transport her to a hospital on a stretcher. He “could hardly get her to stand” {id. at 8), so she “laid out on the floor.” {Id. at 9.)
Petitioner pointed out that Officer Rogers, who offered the test, never specified the type of test or what it entailed, which might have encouraged petitioner, like warning of the consequences of refusal, to realize she could deal with the test offered despite her distress. (People v Garcia-Cepero, 22 Misc 3d 490, 497-498 [Sup Ct, Bronx County 2008].) Without more detail, petitioner well may have expected that the test would require her to breathe hard into an Intoxilyzer when she “felt her airways tightening up” and was gasping for breath due to her asthma. (Verified answer, exhibit A; see People v Bratcher, 165 AD2d 906, 907 [3d Dept 1990]; People v Burnet, 24 Misc 3d at 296-297.) Nor did the officers accommodate her request to loosen her handcuffs to relieve her agitation. Once she refused the test, the officers simply walked away.
III. Evaluating Petitioner’s Refusal of a Chemical Test
A. Whether Petitioner’s Refusal was Knowing and Voluntary
This record supports the conclusion that petitioner’s refusal of the test offered by the police, regardless whether the police recited any warning, resulted from her impaired physical and emotional condition, rather than any knowing decision not to submit to a test. (Gagliardi v Department of Motor Vehs., 144 AD2d 882, 883 [3d Dept 1988].) Vehicle and Traffic Law § 1194 (2) (a), which obligates a driver, when lawfully arrested on rea *320 sonable grounds to believe she was driving while intoxicated, to submit to a chemical test or forfeit her driving privileges, does not require that consent be knowing. (People v Goodell, 79 NY2d 869, 870 [1992]; People v Kates, 53 NY2d 591, 595 [1981]; People v Morrisey, 21 AD3d 597, 598 [3d Dept 2005]; People v Dombrowski-Bove, 300 AD2d 1122, 1123 [4th Dept 2002]; see Gagliardi v Department of Motor Vehs., 144 AD2d at 884.) The statute establishes that
“[a]ny person who operates a motor vehicle in this state shall be deemed to have given consent to a chemical test . . . , at the direction of a police officer:
“(1) having reasonable grounds to believe such person to have been operating in violation of [Vehicle and Traffic Law § 1192] and within two hours after such person has been placed under arrest for any such violation . . . .” (Vehicle and Traffic Law § 1194 [2] [a] [emphasis added].)
Thus a chemical test is valid even when administered to an unconscious, extremely disoriented, or confused person. (People v Goodell, 79 NY2d at 871; People v Kates, 53 NY2d at 593; People v Morrisey, 21 AD3d at 598; People v Dombrowski-Bove, 300 AD2d at 1123.)
Vehicle and Traffic Law § 1194 (2) (a)’s plain language does not, however, conclusively allow a refusal to be unknowing and involuntary. (See People v Morrisey, 21 AD3d at 598; Gagliardi v Department of Motor Vehs., 144 AD2d at 884; People v Rawley, 16 Misc 3d 1103[A], 2007 NY Slip Op 51237[U], *5-6 [Sup Ct, Bronx County 2007].) While the scant prevailing authority does hold that a refusal need not be knowing to trigger a license forfeiture or to admit the refusal as evidence in the prosecution of a charge under Vehicle and Traffic Law § 1192, in each instance the evidence also showed that the driver was not unconscious, unresponsive, or unaware of the warnings given, or the driver actually consented. (People v Morrisey, 21 AD3d at 598-599; Gagliardi v Department of Motor Vehs., 144 AD2d at 884; People v Rawley, 2007 NY Slip Op 51237[U], *5-6.)
The rationale for Vehicle and Traffic Law § 1194 (2) (a)’s implied consent, moreover, is to avoid a result where the greater a driver’s intoxication, the less is her accountability. (People v Kates, 53 NY2d at 595-596; People v Morrisey, 21 AD3d at 599.) The evidence here, however, shows that no such result would ensue, because petitioner did not render herself incapable of *321 knowingly and voluntarily refusing or consenting by excessive drinking or injuries sustained from driving after drinking. (People v Garcia-Cepero, 22 Misc 3d at 494; see People v Kates, 53 NY2d at 595-596; People v Morrisey, 21 AD3d at 599.)
B. Whether Petitioner’s Refusal was Persistent
Even were this court not bound by the Third Department authority that a refusal need not be knowing and voluntary, were to hold instead that it must be knowing and voluntary and therefore were to remand to respondent for findings on that issue, further reasons compel a vacatur of the revocation in any event. For evidence of a person’s refusal to “be admissible in any trial, proceeding or hearing based upon a violation” of Vehicle and Traffic Law § 1192, Vehicle and Traffic Law § 1194 (2) (f) requires a showing not only “that the person was given sufficient warning, in clear and unequivocal language, of the effect of such refusal,” but also “that the person persisted in the refusal.” While all refusals of a chemical test to measure the level of alcohol in blood are violations of Vehicle and Traffic Law § 1194, not all arise from a charge of violating Vehicle and Traffic Law § 1192, as petitioner’s alleged refusal did. A hearing on a refusal and consequent revocation may be based on a violation of Vehicle and Traffic Law § 1192-a (see Vehicle and Traffic Law § 1194 [2] [a], [b]), a traffic infraction, or another noncriminal violation (see Vehicle and Traffic Law § 1194 [2] [a] [4]; CPL 1.20 [39]; Penal Law § 10.00 [2], [3]; Matter of Hahne v New York State Dept. of Motor Vehs., 63 AD3d 936, 937 [2d Dept 2009]), rather than Vehicle and Traffic Law § 1192, on which petitioner’s license revocation hearing was based. But for her arrest for violating Vehicle and Traffic Law § 1192, she never would have been subject to a chemical test that she allegedly refused.
Moreover, Vehicle and Traffic Law § 1194 (2) (f) refers to “any . . . proceeding or hearing,” not just criminal proceedings, and not just judicial as opposed to administrative hearings. (See Hahne v New York State Dept, of Motor Vehs., 63 AD3d at 936-937.) Most significantly, the body of appellate authority affirming administrative hearing determinations of a valid refusal hew rigorously to Vehicle and Traffic Law § 1194 (2) (f)’s companion requirement for a “warning, in clear and unequivocal language, of the effect of such refusal.” (See Matter of Scaccia v Martinez, 9 AD3d 882, 883 [4th Dept 2004]; Matter of Eyrich v Jackson, 267 AD2d 237 [2d Dept 1999]; Matter of Galante *322 v Commissioner of Motor Vehs. of State of N.Y., 253 AD2d 763 [2d Dept 1998]; Matter of Boyce v Commissioner of N.Y. State Dept, of Motor Vehs., 215 AD2d 476, 477 [2d Dept 1995].) Nothing in the statute suggests that the second requirement, for a persistent refusal, be any less observed. (Matter of Dykeman v Jackson, 262 AD2d 877, 878 [3d Dept 1999].)
According to Officer Rogers’s report of the refusal and petitioner’s emphatic testimony, when Officer Rogers offered the test, he never specified the type of test. Officer Anthony nonetheless testified that Officer Rogers “asked her if she wanted to take a blood test; she refused.” (Verified answer, exhibit A, tr at 9.) The officers’ only other mention of her refusal was her words recited in the report, “No — No I’m not giving nothin’,” and the time, 4:05 a.m. Officer Anthony consistently testified that petitioner was otherwise cooperative. Petitioner alluded to her refusal only in explaining her offer to take a sobriety test upon her encounter with the police; the convergent sources of her ensuing distress, agitation, and distraction; and the police’s failure to offer the test initially or after she returned to her calmer, cooperative state.
The record thus lacks substantial evidence that petitioner “persisted in the refusal.” (Vehicle and Traffic Law § 1194 [2] [f|; People v Anderson, 89 AD3d 1161, 1162 [3d Dept 2011]; People v Richburg, 287 AD2d 790, 791 [3d Dept 2001]; see People v Burnet, 24 Misc 3d at 293.) Persistence requires repetitive or unwavering conduct (People v Anderson, 89 AD3d at 1162; People v Richburg, 287 AD2d at 791-792; Dykeman v Jackson, 262 AD2d at 878; People v Bratcher, 165 AD2d at 907), a steadfast position, shown by a continued position despite opposition. (Dykeman v Jackson, 262 AD2d at 878; People v Reynolds, 133 AD2d 499, 502 [3d Dept 1987]; People v Garcia-Cepero, 22 Misc 3d at 494-495; People v Camagos, 160 Misc 2d 880, 884-885 [Crim Ct, Queens County 1993].) While a driver initially may consent to a chemical test and then definitively refuse when actually administered the test, petitioner affirmatively volunteered to submit to a test, but only later, at her most heightened point of distress and agitation, was she asked to submit to a test. (See People v Burnet, 24 Misc 3d at 299.) The police never countered her response to that one request with any opposition, further explanation of the implications, or encouragement; the police never broached the subject again. (People v Garcia-Cepero, 22 Misc 3d at 495; People v Camagos, 160 Misc 2d at 885; see People v Garcia-Cepero, 22 Misc 3d at 497-498.) By simply walk *323 ing away upon her response, the police prevented any further communication with petitioner and any opportunity for her to repeat, continue, or remain steadfast in refusing the test. (People v Garcia-Cepero, 22 Misc 3d at 495; People v Camagos, 160 Misc 2d at 885.)
Moreover, even if a single refusal by itself were enough, petitioner’s single refusal was flanked by prior and subsequent consents, which the police ignored. (See Hahne v New York State Dept. of Motor Vehs., 63 AD3d at 936-937.) While petitioner does not challenge the authority of the person who would administer the test (see Vehicle and Traffic Law § 1194 [4]; Bazza v Banscher, 143 AD2d 715 [2d Dept 1988]), the lack of specificity regarding the test further undermines any finding that petitioner definitively refused a test to measure her level of alcohol intoxication. Even if Officer Rogers asked her to take a blood test, nothing in the hearing testimony indicates the test’s purpose. Only the preprinted portion of his report recites: “the operator was asked to submit to a chemical test to determine the alcoholic and/or drug content of his/her blood.” (Verified answer, exhibit A.) This statement is ambiguous whether Officer Rogers actually described the test to petitioner as one “to determine the alcoholic and/or drug content of his/her blood” or whether this phrase simply describes the test contemplated when he asked her only “to submit to a chemical test” (id.), or “to take a blood test.” (Id., tr at 9.) Her response, “I’m not giving nothin’,” indicates no understanding of either the type or the purpose of any requested test. (People v Garcia-Cepero, 22 Misc 3d at 495.)
The requirement for a persistent refusal recognizes that the refusal to submit to a chemical test evinces the driver’s “consciousness of guilt” that the alcohol content of her blood is high. (People v Anderson, 89 AD3d at 1162; People v Beyer, 21 AD3d 592, 595 [3d Dept 2005]; People v Gallup, 302 AD2d 681, 683 [3d Dept 2003]; Bazza v Banscher, 143 AD2d at 716.) Here, of course, the benefit of hindsight establishes that petitioner bore no guilt to be conscious of. Yet even without hindsight, in the revocation hearing, in contrast to the trial on guilt under Vehicle and Traffic Law § 1192 or a trial on liability for personal injury or property damage due to driving while intoxicated (Bazza v Banscher, 143 AD2d 715 [1988]), her culpability of that act, evidenced by her consciousness of culpability, is not an issue. Therefore she had no reason or occasion to show that the circumstances of her refusal did not evince her culpability of *324 driving while intoxicated. (See People v Burnet, 24 Misc 3d at 300.) Without that opportunity, as is afforded in the trial on the criminal charges or on liability for damages, evidence of a persistent refusal is all the more important: too important for the evidence of persistence to be so lacking here.
IV The Conduct of the Hearing Also Deprived the Record of Substantial Evidence That Any Refusal was Predicated on a Warning
Again hindsight’s clairvoyance shows petitioner would have benefitted from submitting to a test to establish that she was not in fact under the influence of alcohol, as her trial on the criminal charges eventually showed. (People v Garcia-Cepero, 22 Misc 3d at 495.) Conscious of her innocence, petitioner had no incentive to refuse such a test, with its positive consequences, if she were aware of her refusal’s adverse consequences. As she succinctly affirmed in her appeal to respondent’s Appeals Board: “If I had known there were consequences, I would have taken the test.” (Verified answer, exhibit A.)
Of course the ALJ at the hearing did not know the eventual verdict of innocence, but given that distinct possibility, he was obligated to accept the concomitant possibility that she was never warned of her refusal’s adverse consequences equally with the possibility that she was so warned. His conduct of the hearing demonstrates his ready assumption that she was warned and closed-mindedness to any other set of facts. His affirmative assistance and advocacy on the police’s behalf and lack of evenhandedness toward petitioner’s presentation taints what evidence of a warning the record contains. (CPLR 7803 [3], [4]; Matter of Hakeem v Coombe, 233 AD2d 805, 806 [3d Dept 1996].)
Respondent agency offered no evidence that petitioner’s refusal was predicated on a warning of the consequences until the ALJ offered it and developed it through his pointed questioning of respondent’s witness. Although the burden to produce that evidence rested on respondent, the ALJ’s conduct effectively shifted that burden to petitioner, unschooled in the issues to be explored in the hearing, to produce evidence and prove that she was not warned. (CPLR 7803 [3]; Earl v Turner, 303 AD2d 282, 283 [1st Dept 2003]; Matter of Feliz v Wing, 285 AD2d 426, 427 [1st Dept 2001]; Matter of Wheels, Inc. v Parking Violations Bur. of Dept. ofTransp. of City of N.Y., 185 AD2d 110, 111 [1st Dept 1992]; see People v Anderson, 89 AD3d at 1162; Matter of Casalino Interior Demolition Corp. v Martinez, 29 AD3d 691, 692 [2d Dept 2006].)
*325 This biased conduct of the hearing exhibited by the transcript further prejudiced petitioner’s rights (Matter of 1616 Second Ave. Rest. v New York State Liq. Auth., 75 NY2d 158, 161-162 [1990]; Artists & Craftsmen Bldrs. v Schapiro, 232 AD2d 265, 266 [1st Dept 1996]) and violated due process. (Earl v Turner, 303 AD2d 282 [2003]; Feliz v Wing, 285 AD2d at 427; see Barnes v Washington Mut. Bank, FA, 40 AD3d 357, 358 [1st Dept 2007]; Scaccia v Martinez, 9 AD3d at 884.) Whether or not the ALJ actually held a preconceived view of the proved material facts at the hearing (1616 Second Ave. Rest. v New York State Liq. Auth., 75 NY2d at 161), the portions of the transcript referred to above “nonetheless gave . . . that impression.” (Id. at 164.) A disinterested reader of those portions of the transcript could well regard them as evidencing the ALJ’s belief that one of the officers with petitioner after her arrest undoubtedly must have warned her of the consequences of refusing a test to determine her intoxication, even if unproved by the witnesses themselves. The reader could well conclude that the ALJ “in some measure adjudged the facts ... of a particular case in advance of hearing” the proved facts. (Id. at 162; see Matter of Gatto v Adduci, 182 AD2d 760, 761 [2d Dept 1992].) The ALJ’s assumptions, assistance, and advocacy on the police’s behalf and his lack of open-mindedness and evenhandedness toward petitioner’s version of the facts leave no impression of his ever entertaining any likelihood that the officers failed to warn her or that a finding of a warning was unfounded. Instead, the biased impression he gave “lent an impermissible air of unfairness to the proceeding.” (1616 Second Ave. Rest. v New York State Liq. Auth., 75 NY2d at 164.)
An “impartial decision maker is a core guarantee of due process, fully applicable to adjudicatory proceedings before administrative agencies.” (Id. at 161.) The ALJ’s demonstrated bias, in violation of due process, by itself also provides a basis for vacating his decision. (CPLR 7803 [3]; see Scaccia v Martinez, 9 AD3d at 884.)
The ALJ’s affirmative assistance and advocacy on the police’s behalf, without at least equal treatment of petitioner and her potential defenses, worked a particular deprivation of fairness and due process because, if the ALJ was obligated to develop the evidence on behalf of any party, that party was the unrepresented individual petitioner. (Matter of Jackson v Hernandez, 63 AD3d 64, 69 [1st Dept 2009]; Feliz v Wing, 285 AD2d at 427.) Yet the tainted evidence of a warning teased out of respondent’s *326 lone witness relieved respondent of its burden, when otherwise, had the ALJ simply allowed the evidence to develop, petitioner would have been relieved of any burden to rebut and would have had no need even for development of the evidence on her behalf. (CPLR 7803 [3]; Matter of 72A Realty Assoc. v New York City Envtl. Control Bd., 275 AD2d 284, 286 [1st Dept 2000]; Matter of Wheels, Inc. v Parking Violations Bur. of Dept, of Transp. of City of N.Y., 185 AD2d at 111; Hakeem v Coombe, 233 AD2d at 806.) Having extended himself to respondent, the ALJ hardly could retract to allow petitioner’s testimony to prevail over Officer Anthony’s coached albeit tentative testimony, even had the ALJ assisted petitioner to develop her evidence. The strength of her defense, after all, lay in the absence of evidence supporting respondent’s action.
These circumstances independently support reversing the revocation, rather than remanding to respondent agency, even to a different ALJ, for development of a new record. (Earl v Turner, 303 AD2d at 283; Matter of Wheels, Inc. v Parking Violations Bur. of Dept. of Transp. of City of N.Y., 185 AD2d 110 [1992]; Casalino Interior Demolition Corp. v Martinez, 29 AD3d at 691692; Hakeem v Coombe, 233 AD2d at 806.) First, a remand would not undo the coaching of respondent’s witness. Moreover, to whatever extent a remand achieves its purpose in developing the evidence on petitioner’s behalf, thus diminishing any residual evidence of a warning, the result will further weaken the evidence of a persistent refusal — the less the evidence of a definite warning or its reinforcement through repetition, the less the evidence of a definitive, deliberate, or steadfast refusal. (Vehicle and Traffic Law § 1194 [2] [f]; People v Bratcher, 165 AD2d at 907; People v Reynolds, 133 AD2d at 502; People v Garcia-Cepero, 22 Misc 3d at 494-495; People v Camagos, 160 Misc 2d at 884-885.)
Even if the Second Department’s suggestion that substantial evidence of petitioner’s persistent refusal is not required in administrative hearings under Vehicle and Traffic Law § 1194 (Hahne v New York State Dept. of Motor Vehs., 63 AD3d at 936-937) controls over the Third Department’s prior recognition that section 1194 (2) (f) does require that evidence in those hearings (Dykeman v Jackson, 262 AD2d at 878), the ALJ’s prejudgment of the facts and partiality in conducting the hearing tip the balance. (See Scaccia v Martinez, 9 AD3d at 884; Gatto v Adduci, 182 AD2d at 761.) The ALJ’s conduct already has impaired respondent’s evidence of a warning. The remedy *327 for that conduct, upon a remand, would be a development of the evidence in petitioner’s favor. If the footing for respondent’s determination already is failing, and a remand would undermine that footing only further, there is no reason not to reverse the revocation based on the current record.
V Disposition
For the combined reasons set forth, the court vacates respondent’s determination of August 31, 2010, revoking petitioner’s driver’s license and assessing a civil penalty. (CPLR 7803 [3], [4]; 7806; Vehicle and Traffic Law § 1194 [2]; § 1199.) Absent any impediments to reinstatement of petitioner’s license unassociated with her arrest and refusal to submit to a chemical test on November 19, 2009, respondent shall reinstate her license immediately. This decision constitutes the court’s order and judgment granting the petition to the above extent. (CPLR 7806.)